491 P.2d 162

**RIO GRANDE GAS COMPANY, Plaintiff-Appellee,**

v.

**Ray E. GILBERT, Jr., Defendant-Appellant.**

**No. 9296.**

Supreme Court of New Mexico.

Nov. 29, 1971.

Keleher & McLeod, John B. Tittmann, Albuquerque, for defendant-appellant.

Bivins & Weinbrenner, Las Cruces, for plaintiff-appellee.

OPINION

McMANUS, Justice.

This suit was brought in the District Court of Dona Ana County in 1967. The complaint alleged that defendant-appellant Gilbert was indebted to plaintiff-appellee Rio Grande Gas Company in the sum of $6,678.69. The indebtedness arose during the years the appellant served as president of Rio Grande Gas Company.

Appellant answered appellee's allegations by way of general denial and counterclaimed as against the appellee. The counterclaim alleged that the appellant had expended, during the years he served as president, the sum of $9,653.76 for the benefit of the appellee. The counterclaim further alleged that after allowance for all offsets and credits, appellee was indebted to the appellant in the sum of $1,353.76 and that appellee also owed appellant severance and relocation expense in the amount of $2,856.36. The total amount thus counterclaimed was $4,210.12. The appellee's reply to the counterclaim amounted to a general denial of all allegations.

Appellee submitted interrogatories to appellant pursuant to Rule 33, New Mexico Rules of Civil Procedure, and moved for production of documents pursuant to Rule 34, New Mexico Rules of Civil Procedure. After several delays and extensions, the court, upon motion of the appellee, granted a default judgment against appellant under Rule .37(b) (2), New Mexico Rules of Civil Procedure, for refusal to obey the order to produce. Motion to vacate the default was denied and final judgment was entered in the amount of $6,678.69.

Appellant filed a motion to vacate and set aside the final judgment. Since the motion was not acted on within 30 days, and since he felt there was a possibility the motion might be denied by operation of law; appellant appealed. The cause, No. 8903 on the Supreme Court docket, was subsequently dismissed as premature.

The case was returned to the district court and thereafter appellant's motion to set aside the court's prior entry of default and judgment was denied. It is from this order, entered December 16, 1970, that the appellant appeals.

Appellant's contention is that he did in good faith attempt to comply with the court's order to produce documents and was prevented from doing so by the appellee. Further, appellant contends if the court knew he had attempted in good faith to obey the order, but refused to investigate the facts, then the failure by the court to vacate the default was error and an abuse of discretion.

In order to determine if, indeed, there was error, we must look to the facts as established by the existing record.

On April 15, 1968, appellee submitted interrogatories to appellant pursuant to Rule 33, supra. On April 23, 1968, appellee filed a motion for production of documents by the appellant, pursuant to Rule 34, supra. On July 3, 1968, appellee filed a motion for an order to compel the appellant to answer the interrogatories. On August 14, 1968, the court ordered appellant to produce documents within 20 days of the date of the

order and to answer interrogatories not later than 20 days of the date of the order. On September 6, 1968, appellee moved the court to dismiss appellant's counterclaim and render judgment by default on the basis that appellant had failed to comply with the court's orders of August 14, 1968.

Hearing on the above motion was set for September 13, 1968. One day prior to the hearing, answers to the interrogatories were filed. The appellant also agreed to comply with the order to produce documents providing he could be present at the time of examination by the accountants of the appellee. Following this agreement, for a period of some two months, the accountants and the appellant could never seem to come together; thus the appellee never examined the appellant's documents.

On November 12, 1968, the appellee filed an amended motion alleging the above facts and further alleging that the appellant, by his delaying tactics, was refusing to comply with the court's order to produce documents, and as a result of this ostensible refusal appellee was entitled to a default judgment.

Hearing on the motion was set for December 11, 1968, and the appellant was, through his attorney of record, duly notified. On the day of the hearing, neither the appellant nor his attorney put in an appearance. Following the hearing, the court ordered the default judgment be taken against appellant. The motion on the part of the appellant to vacate the order was subsequently denied.

Prior to the hearing on the motion to vacate the default judgment, the appellant changed attorneys. The court held that the change in attorneys and the entry of appearance were contrary to §§ 18-1-13 and 21-1-1(89) of the laws and procedures of New Mexico. The court noted that all those pleadings filed by Mr. Tittmann, the proposed new attorney, would be stricken from the file. The court also found that the requested extension of time requested by the attorney was scandalous and contained unverified, unethical accusations and would

not be allowed by the court. Subsequent proceedings, discussed later in the opinion, resulted in appellant's motion to vacate the default judgment being denied on December 16, 1970.

Appellant claims the court erred in failing and refusing to vacate and set aside the default order of December 20, 1968, and the final judgment entered March 19, 1969.

New-Mexico has no cases that establish the criteria necessary to invoke Rule 37(b)(2), supra, for failure to produce documents. This court has stated, however, that failure to appear for deposition must be wilful; there must be a showing of a conscious or intentional failure to appear. Such a showing will result in a finding of wilful failure to appear and the sanctions of Rule 37, supra, will be imposed. See Kalosha v. Novick, 77 N.M. 627, 426 P.2d 598 (1967). Other jurisdictions have applied the same criteria as noted above to cases where the party has failed to produce documents pursuant to court order. In Oaks v. Rojcewicz, 409 P.2d 839, 840 (Alaska 1966), the court stated:

"In our view the record must establish a willful refusal on the part of a party ordered to make discovery before the court is authorized to dismiss the party's claim under Civ.R. 37(b)(2)[c]."

In a California case, Filipoff v. Superior Court of Los Angeles County, 56 Cal.2d 443, 15 Cal.Rptr. 139, at 143, 364 P.2d 315 at 319 (1961), the court stated:

"Since the subpoena called for the production of those documents, the mere bringing of them to the deposition was not, in any real sense, 'production.' The refusal [of the attorney] to let the documents out of his possession, was tantamount to a refusal to produce * * *."

In a Utah case, the defendant, who had counterclaimed, was ordered to produce documents which he failed to produce. Several months later, at the pretrial conference, he was again ordered to produce documents and again he failed to so comply. The plaintiff filed a motion for default judgment. At the hearing, defendant argued that he had not wilfully failed to produce since he did not have the documents, even though he had testified to the contrary at the initial hearing several months previous. The court granted the default judgment. The Utah Supreme Court, in Tucker Realty, Inc. v. Nunley, 16 Utah 2d 97, 396 P.2d 410, 412 (1964), stated:

"We recognize that the granting of a judgment against a party solely for disobeying an order to cooperate in discovery procedure is a stringent measure which should be employed with caution and restraint and only where the failure has been wilful and the interests of justice so demand. Except in very aggravated cases, less serious sanctions undoubtedly could be applied to accomplish the desired result, particularly where there is any likelihood of injustice by depriving a party of a meritorious cause of action or defense. Whether the failure to comply with the court's order has been wilful and whether the circumstances are so aggravated as to justify the action taken is primarily for the trial court to determine. Unless it is shown that his action is without support in the record, or is a plain abuse of discretion, it should not be disturbed. * * *"

In a 1958 Illinois case, Sager Glove Corp. v. Continental Casualty Co., 19 Ill.App.2d 568, 154 N.E.2d 833 (1958), plaintiff repeatedly failed to comply with an order to produce documents and to submit its president to complete a deposition. Defendants first made motion for deposition by plaintiff's president in November, 1956. Plaintiff failed to comply and defendants gave notice that they would move for an order to dismiss. Plaintiff was ordered to produce its president in January, 1957. The deposition was commenced and continued through several months due to the failure of the deponent to appear. In September, 1957, the defendants obtained an order for production of documents. In October, defendants moved to dismiss for failure to comply with the September order. The matter was continued through November and finally in December, 1957, the motion

to dismiss was granted. On appeal, the Appellate Court of Illinois sustained the trial court. It stated:

"Plaintiff had several opportunities to comply with the deposition and discovery orders but complied fully with none and only partially with one. For this reason * * * we cannot say that the court abused its discretion in dismissing plaintiff's suit.

" * * * [I]f a party fails to produce documents as ordered by the court it is proper to strike his pleading and enter judgment against him as in default. * * * The trial court had the responsibility to uphold the dignity and authority of the court and we cannot say that the serious step taken was not a proper exercise of discretion."

In order to apply any of these holdings to the case before us, we must once again look at the record. The following facts are presented by the record and are uncontradicted:

1) A motion to produce documents was filed by appellee on April 23, 1968.

2) On August 14, 1968, the trial court ordered the appellant to produce the above called for documents within 20 days of the date of the order.

3) When appellant failed to comply with the above order, appellee moved the court to dismiss the counterclaim and render a default judgment on September 6, 1968.

4) A hearing on the motion was scheduled for September 13, 1968. Prior to the motion hearing, however, the appellant answered interrogatories and agreed to produce documents at the office of his attorney for inspection by appellee's accountants.

5) On September 14, 1968, appellant brought a number of boxes and brief cases to the office of appellee's attorney without advance notice. Appellee's attorney had a previous appointment and the documents were not left.

6) On September 27, 1968, appellee's accountant flew to Las Cruces from Phoe-

nix, Arizona. He went to the office of appellant's attorney but the documents were not available for inspection, the reason being that the appellant was in the hospital in El Paso and he wanted to be present when the accountant went over them. The appellant's attorney did suggest that the accountant come to El Paso and he could go over the documents in the hospital room. The accountant returned to Phoenix.

7) In early October, 1968, appellant took all of his personal records to Phoenix in order that the appellee's accountants could examine them there. The accountant handling the case was on vacation; consequently, appellant returned to Las Cruces.

8) Following this trip, appellant contacted the accountants, by long distance telephone, some two weeks later. The substance of that conversation included a statement to the effect that the accountants had been ordered, by Willis Umholtz, representative of the appellee, not to discuss the case with the appellant nor look at any of his records without arranging an appointment with appellant's attorney.

9) In early November, appellant made another trip to Phoenix for the purpose of handing the documents to the accountants. At that time, the only communication was by telephone.

10) After this trip, on November 12, 1968, the appellee filed another motion to dismiss and enter a default judgment.

11) The appellant failed to appear at said hearing due to the fact that his attorney failed to notify him.

It is at this point in the litigation that the record becomes somewhat muddled. Around the middle of February, 1969, the appellant released his then attorney, R. E. Riordan, and then retained the law firm of Keleher & McLeod. John B. Tittmann of the Keleher firm wrote the district court and informed him that the firm had been employed by the appellant and that he, Tittmann, was filing an entry of appearance, motion for extension of time, motion for

oral argument or hearing, and request to plaintiff to admit facts. Following this letter and an order by the court denying all of the above pleadings, appellant filed the proper documents under Rule 89, New Mexico Rules of Civil Procedure, for change of attorney.

There is no doubt that the appellant failed to produce documents as ordered by the court. The question, then, is whether or not the appellant's failure was wilful and, if so, should he be denied relief.

All of appellant's stated attempts to comply with the court's order came well after the appointed time for their submission. These attempts to comply were all attendant with circumstances that would not lend an air of complete earnestness; for example, the appellant appeared at opposing counsel's office on a Saturday, close to noon, and failed to leave the documents for examination; the appellant's trips to Phoenix were without advance notice; the trip of appellee's accountant to Las Cruces, although prearranged, was useless since appellant was in an El Paso hospital and his attorney refused the accountant access to the documents unless he went to El Paso and examined them in the appellant's hospital room. In fact, none of the actions of the appellant were geared with a real attempt to comply with the court's order.

In Brookdale Mill v. Rowley, 218 F.2d 728, (6th Cir. 1954), the court said:

"* * * [F]ailure to act, as well as action, may be willful, New Union Coal Co. v. Walker, 182 Ark. 460, 31 S.W.2d 753; Donk Bros. Coal & Coke Co. v. Peton, 95 Ill.App. 193; and that a willful violation of a provision of a statute or regulation is any conscious or intentional failure to comply therewith, as distinguished from accidental or involuntary non-compliance, and that no wrongful intent need be shown to make such a failure willful. Cf. Roberts, Johnson & Rand Shoe Co. v. Dower, 7 Cir., 208 F. 270; In re Pierce, 163 N.C. 247, 79 S.E. 507; * * *."

Further, in the cause before us there are indications that the trial court made a distinct effort to expedite the matter, as can be seen by the delay of orders and the correspondence between parties, and between the parties and the court. We see no abuse of discretion on the part of the trial court that should change the result.

The decision of the trial court will be affirmed.

It is so ordered.

OMAN and STEPHENSON, JJ., concur.