# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

LARRY M. WELENC,                          )
                                          )
            Plaintiff,                     )
                                          )
      v.                                   )      C.A. No.: N17C-04-255 AML
                                          )
THE UNIVERSITY OF DELAWARE,                )
                                          )
            Defendant.                     )

Submitted: August 24, 2017
Decided: November 20, 2017

## MEMORANDUM OPINION

### Upon Defendants' Motion to Dismiss: Granted

Larry M. Welenc, *Pro Se.*

William E. Manning, Esq., and Gerard M. Clodomir, Esq. of SAUL EWING, LLP, Wilmington, Delaware, Attorneys for the University of Delaware.

**LeGROW, J.**

This case involves the alleged breach of a 1981 settlement agreement between a student of the University of Delaware and the University's administration, along with alleged defamation by the University regarding the plaintiff's academic and disciplinary record. The University has moved to dismiss the claims as time-barred. The question before the Court is whether the claims presented are barred by the statute of limitations when the plaintiff became aware of the alleged breach and defamation back in 2000. Due to the extended time that elapsed after the plaintiff's discovery of the facts underlying his claims, I conclude the claims are time-barred and therefore grant the defendant's motion. My reasoning follows.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are drawn from the amended complaint and the documents it incorporates, drawing all reasonable inferences in favor of the plaintiff. The facts involve events from the plaintiff's college years through 2001.

In 1978, Larry Welenc ("Welenc") transferred from Rider College in New Jersey to the University of Delaware (the "University") to increase his chances for admission to a master's program in geology. In 1979, Welenc won the lottery for a room in Christina Hall dormitory. Before he moved into Christina Hall, Welenc received a visit from two fellow students. One was another lottery-winning student who was designated to room with Welenc, the other was the lottery-winner's

1

friend, a tackle from the University's football team. The visitors warned Welenc that they would remove him if he tried to occupy the room in Christina Hall the following spring. After the visitors left, Welenc reported the incident to the Director of Department Housing. Based on this experience, Welenc avoided the football team members and anyone associated with them.

Nine months after the incident, a female student, who was a known associate of the other lottery-winner, charged Welenc with harassment. Five students expressed their concerns with Welenc's behavior to the Dean of Students, Raymond Eddy. Dean Eddy, along with the University's Behavior Evaluation Committee (the "Committee"), required Welenc to meet with the University Psychiatrist, Dr. Spinelli. Welenc had been off campus and did not receive the request for appointment. When Welenc failed to schedule an appointment with Dr. Spinelli by the requested date, the Committee directed Welenc to be withdrawn involuntarily from the University. Welenc, upon learning of the request, contacted Student Health Services and scheduled an evaluative interview with Dr. Spinelli. After the interview, Dr. Spinelli recommended Welenc's readmission.

Meanwhile, the scheduled disciplinary hearing for Welenc's alleged harassment was canceled because the female accuser and her witnesses decided not to attend the hearing. The Associate Dean of Students, Timothy Brooks, dropped the disciplinary charges at the request of the security department. The University

2

readmitted Welenc, but restricted his access to the residence and dining halls. Welenc suspected the University administration made these restrictions made out of malice.

During Easter break in 1980, campus security confiscated several marijuana plants from the Pencader Dormitory. Welenc, though not a resident of Pencader, interceded on the marijuana-growers' behalf to Dean Eddy. Welenc alleges his intercession contributed to the administration's malice toward him.

As a result of the disciplinary procedure and involuntary withdrawal, Welenc incurred out-of-pocket expenses, lost wages, and lost funds paid to the University. He also grew concerned about the incident's effect on his academic record and wanted his file destroyed. On July 7, 1980, Welenc's attorney, Norman Levine, sent a letter to the University claiming $8,938.63 in damages.

The University settled Welenc's claim for $1,500 (the "Settlement Agreement"). The letter confirming the Settlement Agreement stated Welenc's files would "be disposed of in the same manner as all student files."[1] The University also allegedly represented they would not delay issuing his diploma upon graduation.

Welenc completed his course work in December 1979, but his major required students to attend a summer field camp for geology in Nevada during the

---

[1] Ex. I to Am. Compl.

3

summer of 1980. The University thus awarded Welenc his degree after completion of the field camp in August 1980. Welenc's diploma is dated 1981; Welenc alleges he did not notice the date and assumed his diploma was dated 1980.

Since 1980, Welenc has applied to various government and private positions. Some of those applications were rejected, he believes, either because of the date on his diploma or because the University conveyed to those prospective employers an inaccurate version of Welenc's disciplinary record.

Sometime in the year 2000, Welenc discovered his diploma was dated 1981, rather than 1980, and he so informed the University.[2] The University explained to Welenc that, at the time his diploma was issued, the University only issued diplomas once every academic year and, because Welenc did not complete his coursework by May 1980, his diploma was not issued until the following academic year. Despite Welenc's efforts, the University declined to change the date on the diploma. In April 2017, Welenc filed suit against the University alleging breach of contract, defamation, and slander, as well as an order compelling the University to change the date on his diploma. The University moved to dismiss and the parties

---

[2] Am. Compl. at 14. "Plaintiff eventually discovered that the date listed on his diploma was incorrect and informed the University of Delaware that the date [sic]. The University of Delaware staff maintained during telephone conversations with the Plaintiff after the year 2000 that the 1981 completion date was the result of Plaintiff attending Summer Field Camp in 1980 and not completing his degree until [sic] date August 9, 1980, resulting in a completion date of the following year." *Id.* Welenc conceded during oral argument that he was aware in 2000 that his diploma was dated in 1981, that the University contended diplomas only were issued once a year, and that he also was aware at that time that his 1988 diploma was issued in December 1988, a fact arguably inconsistent with the University's explanation. See Ex. K to Am. Compl.

4

briefed and argued that motion. Welenc also moved to sanction the University's attorney for alleged derogatory statements and accusations of harassment.

**THE PARTIES' CONTENTIONS**

Welenc argues the University maliciously altered the date of his diploma and retained and disclosed the contents of his student file because of the disciplinary incidents in 1979 and 1980. Welenc first argues the post-dating of his diploma, as well as the retention of his student file, is a breach of the 1981 Settlement Agreement with the University. He seeks an order compelling the University to change the date of his diploma to reflect the calendar year of his graduation. Welenc also argues the University defamed him by misrepresenting the date of his graduation and by disclosing his record to potential employers to which Welenc submitted job applications. In response, the University argues all Welenc's claims are barred by the statute of limitations.

**STANDARD OF REVIEW**

On a motion to dismiss, the Court must determine whether the "plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof."[3] "If [the plaintiff] may recover, the motion must be denied."[4] A court may grant the motion if "it appears to a reasonable certainty that under no state of facts

---

[3] *Holmes v. D'Elia*, 129 A.3d 881 (Del. 2015) (citing *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978)).

[4] *Deuley v. DynCorp Int'l, Inc.*, 2010 WL 704895, at *3 (Del. Super. Feb. 26, 2010) (citing *Parlin v. DynCorp Int'l, Inc.*, 2009 WL 3636756, at *1 (Del. Super. Sept. 30, 2009) (quoting *Spence*, 396 A.2d at 968)), *aff'd*, 8 A.3d 1156 (Del. 2010).

which could be proved to support the claim asserted would plaintiff be entitled to relief."[5] When applying this standard, the Court accepts as true all non-conclusory, well-pleaded allegations.[6] In addition, "a trial court must draw all reasonable factual inferences in favor of the party opposing the motion."[7] A defense based on a statute of limitations may be raised in a motion to dismiss when the complaint itself shows that the claims were not brought within the statutory period.[8]

## ANALYSIS

### A. The claims based on breaches of the 1981 Settlement Agreement claim are time-barred because Welenc was on actual notice of the claims by the year 2000.

Welenc argues the University breached the Settlement Agreement by changing his diploma's completion date and by maintaining a record of his student file. Welenc alleges that, during settlement negotiations, the University stated it would not hold up his diploma upon graduation.[9] Welenc argues that instead of withholding his diploma, the University maliciously altered the completion date in violation of the Settlement Agreement. Welenc further contends the University breached that Agreement by continuing to retain a copy of his student file.

---

[5] *Fish Eng'g Corp. v. Hutchinson*, 162 A.2d 722, 724 (Del. 1960) (citing *Danby v. Osteopathic Hosp. Ass'n of Del.*, 101 A.2d 308, 315 (Del. Ch. 1953), *aff'd*, 104 A.2d 903 (Del. 1954)); *Nero v. Littleton*, 1998 WL 229526, at *3 (Del. Ch. Apr. 30, 1998).

[6] *Pfeffer v. Redstone*, 965 A.2d 676, 683 (Del. 2009).

[7] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005) (citing *Ramunno*, 705 A.2d 1029, 1034 (Del. 1998) (citing *Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 38 (Del. 1996)) (other citations omitted)).

[8] *Lima Delta Co. v. Global Aerospace, Inc.*, 2017 WL 4461423, *5 (Del. Super. Oct. 5, 2017).

[9] I note that nothing in the record memorialized this representation. *See* Ex. I to Am. Compl.

Under Delaware law, no action to recover damages arising out of breach of contract may be brought after the expiration of three years from the date the cause of action accrues.[10] Such a claim accrues as soon as the wrongful act occurs, even if the plaintiff is ignorant of the wrong.[11] For breach of contract claims, the cause of action accrues at the time of the breach.[12] Therefore, under Welenc's alleged facts, the claims accrued when the University (1) issued Welenc's diploma in 1981, and (2) maintained a record of his student file in a manner inconsistent with its treatment of other student files.

The statute of limitations may be tolled, however, when the claim involves inherently unknowable injuries or the doctrines of equitable tolling or fraudulent concealment apply.[13] In such a case, the statute only is tolled "until the plaintiff discovers (or exercising reasonable diligence should have discovered) his injury— that is to say, until plaintiff is on inquiry notice. A "[p]laintiff is on inquiry notice if he is in possession of facts sufficient to make him suspicious, or that ought to make him suspicious."[14]

With respect to Welenc's claims regarding the date on his diploma, even if tolling applied, Welenc arguably was on inquiry notice as early as 1981, when he received his diploma, and was on actual notice of sufficient facts no later than the

---

[10] 10 *Del. C.* § 8106.

[11] *Albert v. Alex. Brown Mgmt. Serv., Inc.*, 2005 WL 5750601, *18 (Del. Ch. Jun. 29, 2005).

[12] *Certaineed Corp. v. Celotex Corp.*, 2005 WL 217032 *7 (Del. Ch. Jan. 24, 2005).

[13] *Smith v. McGee*, 2006 WL 3000363, *3 (Del. Ch. Oct. 16, 2006).

[14] *Id.* (internal quotations omitted).

year 2000. In his amended complaint and at oral argument, Welenc conceded that he inquired about the diploma date discrepancy during telephone conversations he had with University staff in 2000. Consequently, Welenc concedes he was on actual notice of the alleged breach of the Settlement Agreement in 2000.[15] Welenc's claim for breach of the Settlement Agreement therefore is time-barred, as is his request for an order compelling the University to change the date on the diploma.[16]

Additionally, notwithstanding the statute of limitations, no reasonable inference supports the assertion that the University breached the Settlement Agreement by maintaining a record of Welenc's student file. As explained below, Welenc was on inquiry notice more than three years ago that the University continued to maintain his file. Moreover, Welenc's Amended Complaint does not plead that the University treated Welenc's file in a manner different from other student files. The University agreed that Welenc's "University files w[ould] be disposed of in the same manner as all student files."[17] Welenc has pleaded no facts to support an inference that the University acted in a manner inconsistent with the Settlement Agreement.

---

[15] At oral argument, Welenc argued he could not bring his claim until 2015, when he had a written statement from senior University personnel of the University's purportedly false explanation for the date of the diploma. Welenc conflates the "evidence" necessary to prove his claim with the knowledge of facts sufficient to make him suspicious.

[16] Of course, if this claim survived, this Court would not have subject matter jurisdiction to grant Welenc injunctive relief.

[17] Ex. I to Am. Compl.

**B. Welenc's defamation claims are time-barred by his actual discovery of the underlying facts more than fifteen years ago.**

Welenc claims the University committed defamation by misrepresenting his graduation year or his disciplinary record to potential employers. Welenc argues his reputation was maligned by the implication that Welenc required six years to complete his bachelor's degree or involuntarily was withdrawn from the University.

No action to recover damages arising out of a tort claim, such as defamation, may be brought after the expiration of three years from the date the cause of action accrues.[18] As noted above, the action accrues at the time of the wrongful act, and any tolling doctrine applies only until a party is on inquiry notice of his claim.

Welenc's tort claims are time-barred for the same reasons as his breach of contract claim. In his amended complaint, Welenc claims he applied to several employers, the last of which was the New Jersey Gaming Board in 2001. Even if the University conveyed false information that was harmful to his reputation, Welenc had actual notice by 2000 that his diploma was dated in 1981 and that his student file had not been destroyed, therefore allowing University officials to access it in response to employer inquiries. As a result, 2003 was the last year Welenc could have brought a defamation claim under the circumstances alleged in his complaint. Welenc's defamation claims therefore are time-barred.

---

[18] 10 *Del. C.* § 8106.

## C. Sanctions against the University's attorneys are not warranted.

While the University's motion to dismiss was pending, Welenc attempted to propound discovery on the University, prompting the University to move to stay discovery while the Court resolved the motion to dismiss.[19] In response, Welenc moved to strike one of the brief's exhibits and sought sanctions against the University's attorney for making allegedly untrue, unethical, and derogatory statements. The University did not oppose Welenc's motion to strike and the Court granted the motion. The Court also granted the University's motion to stay discovery.

Rule 37 (a)(4)(A) provides:

> If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the Court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the Court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.[20]

---

[19] Def.'s J. Mot. Stay and Opp'n to Pl.'s Mot. Compel. Citing *Anderson v. Airco, Inc.*, 2004 WL 2828208, at *1 (Del. Super. Feb. 23, 2004) ("A stay of discovery is appropriate where a potentially case dispositive motion is pending, and there is no prejudice to the non-moving party.") (internal quotations omitted).
[20] Super. Ct. Civ. R. 37(a)(4)(A).

10

This Court has discretionary power under Rule 37 so that cases are decided on their merits, not on technicalities.[21]

Sanctions against an attorney only are appropriate under Rule 37(a)(4) if the Court first has granted a motion to compel discovery. Here, rather than grant Welenc's motion to compel, the Court granted the University's motion to stay. The University's opposition to the motion thus substantially was justified and Welenc's motion for sanctions is unwarranted. To the extent Welenc seeks sanctions based on the motion to strike, the Court does not believe counsel's actions were inappropriate or warrant an award of sanctions.

## CONCLUSION

For the foregoing reasons, the University's Motion to Dismiss is **GRANTED** and Welenc's Motion to Impose Sanctions is **DENIED**.

---

[21] *Williams v. Hall*, 176 A.2d 608, 616 (Del. Super. 1961).

11